UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~

**IVY RESTAURANT GROUP, INC.**                     Chapter 7
    Debtor                                              Case No. 10-18394-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

I. PROCEDURAL BACKGROUND

The matter before the Court for determination is the Motion filed by the Chapter 7 Trustee, Lynne Riley to Sell Personal Property and Liquor License and to Assume and Assign Liquor License (the "Motion"). Through her Motion, the Trustee seeks to sell personal property and equipment associated with the restaurant formerly operated by the Ivy Restaurant Group, Inc. (the "Debtor"), which she asserts are property of the estate. William Ashmore ("Ashmore"), the former President of the Debtor and fifty percent shareholder, filed a "Notice" through which he objected to the sale of five items of personal property. Ashmore claims those items are not property of the estate, and, instead, are owned by him or another corporation of which he is the principal, namely Boston Lounge Group, Inc.

The disputed items of personal property set forth in Ashmore's Notice include the following: a custom-made performance stage; a computer server and several computer

processing units (CPUs); a computerized POS system hardware owned by Boston Lounge Group, Inc.;[1] Aldelo POS interface software; 50 red chairs; and a crystal chandelier.

The Court heard the Trustee's Motion on January 18, 2011, and after submission of sealed bids for the Debtor's liquor license, approved the sale of the liquor license. The Court treated the Notice filed by Ashmore as an objection to the sale of personal property. As the objection raised issues of fact, the Court scheduled the matter for an expedited evidentiary hearing. The Court conducted the evidentiary hearing on January 21, 2011. Ashmore called three witnesses to testify, and introduced three exhibits into evidence at his request.[2] The Trustee introduced two exhibits into evidence, but did not present any testimonial evidence.

In accordance with Fed. R. Bankr. P. 7052, the Court now makes the following findings of fact and rulings of law.

## II. FACTS

The Debtor filed a Chapter 11 petition on August 2, 2010, and the case was converted to a case under Chapter 7 on October 6, 2010, at which time the Trustee was appointed. At all material times, the items of personal property which Ashmore claims he or Boston Lounge Group, Inc. owns were used in the operation of the Debtor's restaurant and were located at the premises formerly leased by the Debtor at 49 Temple Place, Boston,

---

[1] At the evidentiary hearing, Ashmore withdrew his claim that either he or Boston Lounge Group owned this software.

[2] The Court sustained a number of the Trustee's objections to documents Ashmore sought to introduced.

Massachusetts.

The Debtor filed Schedules of Assets and Liabilities and a Statement of Financial Affairs dated August 30, 2010. In the Declarations attached to the Schedules and Statement, which were executed by Ashmore as President of the Debtor, he declared under penalty of perjury that he read the Schedules and Statement and that they were true and correct to the best of his knowledge, information, and belief. On Schedule B - Personal Property, in response to Question 29 with respect to ownership of office equipment, furnishings, equipment and supplies used in business, the Debtor listed the following "POS Systems restaurant equipment, fixtures and furnishings" with a value of $250,000 and "Misc. Office equipment and furnishings" with a value of $2,000. On Schedule G- Executory Contracts, the Debtor did not disclose any executory contracts or leases. On the Statement of Financial Affairs, in response to Question 14 "Property held for another person," which requires the debtor to list all property owned by another person that the debtor holds or controls, the Debtor responded "None."

Ashmore disclaimed responsibility for the Schedules and Statements, maintaining that he did not understand the bankruptcy process or his obligations with respect to the accuracy of the documents. The Court, however, finds Ashmore's assertion to be incredible, as Ashmore is an intelligent and knowledgeable businessman who has the most knowledge of the Debtor's assets, liabilities, and financial affairs.

Ashmore, his partner, Rosemary Lucas ("Ms. Lucas"), and her brother provided the capital for and opened Ivy Restaurant in August of 2005. Ms. Lucas and Ashmore each

contributed $300,000 in initial capital. The Debtor, however, experienced financial difficulties from the outset. Ashmore and Ms. Lucas both testified that when the Debtor could not afford to pay for equipment or supplies which the restaurant needed, Ashmore would buy those items with his personal funds or credit, including several of the items in dispute, and provide them to the Debtor for its restaurant operations. Ashmore testified that he considered the purchase of necessities for the operation of the restaurant as contributions to capital. At trial, no competent evidence was introduced as to how the items of personalty were reflected on the Debtor's books and records, and no bills of sale, leases, or other documents reflecting ownership of the items by Ashmore were introduced into evidence.

Ashmore testified that he and Leonardo Rodrigues ("Rodrigues"), a contractor hired by Ashmore, obtained architectural antiques, namely, ornamental cast iron fencing and grates from the demolished Filene's Department Store at One Franklin Street in downtown Boston. Ashmore testified that the ornamental grates were given to him by the developers of the One Franklin project. He and Rodriguez removed the grates from Filene's and first installed some of them in Stoddard's Restaurant, located across the street from the Ivy Restaurant, where they were employed as contractors. They used the remaining grates to construct a free standing performance stage, which they installed at the Debtor's premises. Ashmore intended the stage to be used for live performances at the restaurant in order to increase revenue through live entertainment. According to both witnesses, the task was difficult, labor-intensive, and took many hours. In describing the stage, both Ashmore and

4

Rodrigues testified that it is not attached or affixed to the real estate; rather, it is attached to a beam with several clamps. They further explained that the stage stands on its own and can be easily removed from the premises in approximately one hour by two workers.

Ms. Lucas testified that Ashmore paid an independent contractor for the costs of sandblasting the ornamental iron. No documentary evidence to corroborate this contention was introduced into evidence.

Ashmore also maintained that he, not the Debtor, is the rightful owner of a server and four computers located at the Debtor's premises that were used in connection with the Debtor's operations. The server and CPUs were seized by the Trustee on the conversion date, and they are now in the possession of the Trustee's accountant. In support of his claim, Ashmore introduced a recent picture of the computer screen taken at the Trustee's accountant's office. The photograph reflects the presence of a file entitled "SERVER ASHMORE." Ashmore testified that he bought the server and four computers for the Debtor when the Debtor's computer hardware failed. Ashmore did not introduce any documentary evidence other than the picture of the screen in support of this contention.

Ashmore contended that Boston Lounge Group, Inc. is the true owner of "POS interface software." He conceded that this was the cash register system used in the Debtor's restaurant operations. A POS Systems is listed on the Debtor's Schedule B. Ashmore did not introduce any documentary evidence to support his claim that the POS System was not property of the Debtor.

Ashmore and Ms. Lucas testified that they were together when Ashmore purchased

5

a crystal chandelier for $3,000 in cash from an electrical supply store in South Boston. They testified that the funds used for the purchase belonged to Ashmore. The chandelier was installed in the Debtor's restaurant to replace other lighting and remained there as of the conversion date.

Ashmore claims that he is the true owner of fifty (50) chairs that were used for seating in the Debtor's restaurant. According to both Ms. Lucas and Ashmore, Ashmore purchased them from the Bombay Company, which is now out of business, with his personal credit card. The Debtor did not pay the credit card bill. The Trustee did not rebut this evidence. There was no evidence that the chandelier was ever hung in any location other than the Debtor's restaurant.

### III. DISCUSSION

#### A. Applicable Law

The definition of property of the estate is extremely broad and encompasses all legal and equitable interests the debtor has in property as of the commencement of the case wherever located and by whomever held. *See* 11 U.S.C.§ 541(a). Section 541(a)(1) of the Bankruptcy Code allows the trustee to obtain possession of, use, and sell property of the estate in which the debtor had an equitable interest, as well as legal title, on the petition date. *See* United States v. Whiting Pools, 462 U.S. 198 (1983).

#### B. Analysis

The issue presented is simply whether the Debtor or Ashmore (or another corporation owned by Ashmore, Boston Lounge Group, Inc.) owned the items of personal

6

property. The credible evidence in this case supports the conclusion that the items in dispute claimed by Ashmore were property of the debtor as of the date of the filing of the Chapter 11 petition and are property of the estate.

Ashmore did not prove that either he or Boston Lounge Group, Inc. owned the disputed items. There was no independent documentary evidence to support Ashmore's claim, and his testimony that he did not intend for the Debtor to be the owner of the personal property was not credible. Indeed, Ashmore's conduct belied and was totally inconsistent with his present position. He allowed the Debtor to exclusively use the personal property before and after the commencement of the Chapter 11 case. At all material times, the property was used exclusively by the Debtor at the Debtor's place of business. Furthermore, Ashmore executed the Schedules and Statement of Financial Affairs as the Debtor's President without indicating any claim to ownership of the items of personalty. It was only after conversion to Chapter 7 when the Trustee sought to sell the personal property that he formally claimed an ownership interest in the items on behalf of himself or Boston Lounge Group, Inc. In addition, Ashmore conceded that on many occasions he contributed property that he purchased to the Debtor for use in its operations as capital contributions. Accordingly, the credible and plausible inference is that Ashmore intended that the items he now claims constitute part of his investment in the Debtor. The credible evidence supports the ruling that the property contributed by Ashmore to the Debtor is property of the estate.

**IV. CONCLUSION**

In accordance with the forgoing, the Court overrules Ashmore's objection to the sale of the Debtor's personal property and grants the Trustee's Motion in full.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: January 24, 2011